IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL W. BRADLEY,** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 2:23-cv-00024 |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| **OHIO ETHICS COMMISSION,** *et al.*, | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

**I.      INTRODUCTION**

In 2018, Plaintiff, Michael W. Bradley, sought to run for statewide office as a write-in candidate. Initially, he did not realize that he was required to file a financial disclosure statement with the Ohio Ethics Commission ("the Commission" or "OEC") to be a candidate. When asked to do so, he refused. As a result, his attempt to register as a candidate for the Ohio Secretary of State position was rejected and he was later subjected to an ethics complaint before the Commission and a criminal prosecution in the Franklin County Municipal Court. Proceeding without the assistance of counsel, he now brings suit in this Court against the Commission and various individuals involved in these events.

Defendants have all filed motions to dismiss. This Court finds the motions persuasive. Sovereign immunity bars Bradley's claims against the Commission, as an arm of the State of Ohio, and against the individual defendants, who are all state officials, in their official capacities. His claims against the individual defendants in their personal capacities are barred by prosecutorial immunity, quasi-judicial immunity, and qualified immunity. Accordingly, this Court **GRANTS** the motions to dismiss (ECF Nos. 9, 10, 16, 20). This Court also **DENIES**

1

Plaintiff's Motions to Strike (ECF No. 14, 19, 23) and Motion to Dismiss Secretary LaRose as Party Defendant (ECF No. 18), and **DENIES AS MOOT** Plaintiff's Motion for Summary Judgment (ECF No. 26).

## II. BACKGROUND

Seeking to be a voice for issues not addressed by major-party candidates, Bradley filed to run as a write-in candidate for Ohio Secretary of State in the 2018 election. He submitted his candidacy application on August 23, 2018. (Compl. ¶ 12, ECF No. 2). Candidates for office in Ohio are required to pay a $95 filing fee and complete a personal Financial Disclosure Statement ("FDS") for the previous calendar year with the OEC. (*See* Pl.'s Ex. A, ECF No. 2-2 at 1). The OEC, upon receiving Bradley's application and discovering that he had not fulfilled either of those requirements, promptly reminded him to do so on or before October 17, 2018. (*Id.*). At first, he refused to do so. And when he did file a financial affidavit, it was not done on the right form. (*See* Compl. ¶¶ 13–17, ECF No. 2; Pl.'s Ex. C, ECF No. 2-2 at 3). The OEC provided him with the proper form and warned him that a failure to file the FDS by February 22, 2019, could result in a formal complaint before the OEC. (*See* Pl.'s Ex. D, ECF No. 2-2 at 4).

The February 22 deadline came and went with no follow-up from Bradley. As promised, the OEC filed a formal complaint, and scheduled a hearing for August 12, 2019 (which was later continued). (*See* Compl. ¶¶ 20–21, ECF No. 2). Separately, the Columbus City Attorney filed a criminal complaint in the Franklin County Municipal Court in April 2020 against Bradley for failing to file a financial disclosure statement in violation of Ohio Rev. Code § 102.02(C). (*See* Pl.'s Ex. J, ECF No. 2-2 at 16). In response, Bradley filed a demurrer to the complaint, to which the Columbus City Attorney did not respond. (Pl.'s Ex. K, ECF No. 2-2 at 17–18). Due to the § 102.02(C) violation, the Franklin County Municipal Court issued an "OI Warrant – BMV

2

Warrant Block" in July 2020, pursuant to which the Bureau of Motor Vehicles ("BMV") notified Bradley that his driver license and registration had been blocked and that he could not be issued a temporary license or register a motor vehicle in Ohio. (Pl.'s Ex. M, ECF No. 2-2 at 20).

More than two years later, Bradley filed suit in this Court against the Ohio Ethics Commission; three members of the OEC (Paul M. Nick, Merom Brachman, and Molly J. Bruns); Lori M. Tyack, the Clerk of Courts for the Franklin County Municipal Court, and two deputy clerks (whose names are not known); Zach Klein, the Columbus City Attorney; Charles L. Norman, the Registrar of the BMV; and Jon Husted, the former Ohio Secretary of State. Bradley invokes 42 U.S.C. § 1983, alleging that Defendants have deprived him of due process and of his rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution. He goes on to specify three counts: (1) wilful infliction of intentional harm to character and reputation; (2) failure to notify of a change in status; and (3) undue harassment, abuse of process, and malicious prosecution. (*See* Compl. ¶¶ 69–71, ECF No. 2).

The following groupings of Defendants have filed motions to dismiss: (1) Norman; (2) Frank LaRose; (3) Deputy Clerk # 889, Deputy Clerk # 8098, Lori M. Tyack, and Zach Klein ("the Franklin County Defendants"); and (4) the OEC, Nick, Brachman, and Bruns ("the Commission Defendants"). Bradley has not responded to the motions, instead moving to strike them; he has also moved to dismiss LaRose from this suit. All motions are now ripe for review.

### III. STANDARD OF REVIEW

Rule 12(b)(1) authorizes a party to seek dismissal of a case for lack of subject matter jurisdiction. Without subject matter jurisdiction, a federal court is deprived of "authority to hear a case." *Smith v. DeWine*, 476 F. Supp. 3d 635, 650 (S.D. Ohio 2020) (citing *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990)). A motion to dismiss pursuant to Rule

3

12(b)(1) also serves as the "proper vehicle to assert Eleventh Amendment immunity." *Lee Testing Eng'g, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 725 (S.D. Ohio 2012) (citation omitted).

Dismissal may also be warranted if the complaint does not state a claim on which relief can be granted. FED. R. CIV. P. 12(b)(6). A "motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005) (citation omitted). Consequently, a court must accept all factual allegations as true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted).

To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and 'to state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.,* 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And though the court "must accept all well-pleaded factual allegations in the complaint as true," *id.*, the court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

The pleadings of a *pro se* litigant are held to "less stringent standards than formal pleadings drafted by lawyers." *Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 614 (6th Cir. 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Among such essentials are the obligations under Rule 8(a) to provide "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief." Finally, "it is not within the purview of the district court to conjure up claims never presented." *Frengler v. Gen. Motors*, 482 F. App'x 975, 977 (6th Cir. 2012).

## IV. LAW & ANALYSIS

This Court first addresses Plaintiffs' motions to strike and his motion to dismiss LaRose, before turning to the merits of Defendants' motions.

### A. Threshold Motions

Instead of filing memoranda opposing the motions to dismiss, Bradley moves to strike the motions. (*See, e.g.*, Mots. to Strike, ECF Nos. 14, 19, 23). He does so not because they include "redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Rather, Bradley moves to strike the motions because he believes they are procedurally improper responses to his complaint. He writes that Defendants are required to submit "a proper Answer [sic] to the complaint," and should not file "sidereal motion[s] . . . [about] the jurisdiction of this court." (*See, e.g.*, Mot. to Strike ¶ 2, ECF No. 14).

The rules of civil procedure and the maze of deadlines set forth therein are undoubtedly confusing. Typically, after a plaintiff files a complaint in federal court, the defendant(s) has 21 days to file an "answer" after she has been served with the summons and the complaint. FED. R. CIV. P. 12(a)(1)(A)(i). There are a couple of exceptions to this rule. One exception is this: the defendant has an opportunity to file a "motion to dismiss" instead of filing an "answer." A "motion to dismiss" asks the court to throw out the case because, for example, the court lacks jurisdiction over the case or over the defendant, or there is a different court located somewhere

else that is better suited to hear the case. *Id.* 12(b). If a defendant chooses to file a "motion to dismiss," then she does not need to file an "answer" immediately in response to the complaint, but can wait until after the court denies the motion to dismiss (if it does so). *Id.* 12(a)(4)(A).

In short, it is normal for defendants to file a motion to dismiss in response to a complaint. Such motions are not "sidereal" or tangential. And while a motion to dismiss is not an "answer" in the technical sense, an "answer" is not required immediately where a motion to dismiss has been filed. So there is no issue with Defendants' decisions to file motions to dismiss instead of answers. Bradley's motions to strike are without merit.

The motions to strike are directed towards three of the four motions to dismiss. The exception is LaRose's motion to dismiss. Bradley instead moves to dismiss LaRose from the case, noting that LaRose was not named as a defendant and suggesting that Husted must answer the complaint instead. (*See* Mot. to Dismiss Secretary LaRose as Party Defendant, ECF No. 18). That is not the case. In his complaint, Bradley named Husted in his official capacity as the Ohio Secretary of State. (*See* Compl. ¶ 11, ECF No. 2). When a state or federal official is a party to a lawsuit in her official capacity, the suit "does not abate when [she] . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party." FED. R. CIV. P. 25(d). In other words, because Bradley has sued Husted in his official capacity as Ohio Secretary of State, Husted is removed from the case when he finished his term in that position and replaced with his successor—Frank LaRose. Thus, LaRose is a proper party to this case and his participation is appropriate. Husted need not answer the complaint.

Accordingly, this Court **DENIES** Bradley's Motion to Strike (ECF No. 14), Motion to Dismiss Secretary LaRose as Party Defendant (ECF No. 18), Motion to Strike (ECF No. 19), and Motion to Strike (ECF No. 23).

B.  Sovereign Immunity

This Court next explains why it lacks subject matter jurisdiction to hear Bradley's claims against the Commission and against the individual defendants in their official capacities. This Court, like all federal courts, is a court of limited jurisdiction, which means that it has authority only over some, not all, cases. One limitation is referred to as "subject matter jurisdiction," which "defines the court's authority to hear a given type of case." *United States v. Morton*, 467 U.S. 822, 828 (1984).

The Eleventh Amendment, where applicable, limits the subject matter jurisdiction of the federal courts. It bars federal courts from hearing suits against states brought by its citizens. *See Hans v. Louisiana*, 134 U.S. 1, 10 (1890). This is commonly referred to as "sovereign immunity." *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). In this context, the idea of "sovereignty" refers to the system of "dual sovereignty" established by the Constitution, by which "the States surrendered many of their powers to the new Federal Government, [but] retained 'a residuary and inviolable sovereignty.'" *Printz v. United States*, 521 U.S. 898, 918, 919 (1997) (first quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991); then quoting THE FEDERALIST NO. 39, at 245 (James Madison)). It does not, on the other hand, refer to "sovereignty" in the foreign relations sense. (*See also* Pl.'s Mot. to Strike ¶ 3, ECF No. 19) (disputing the sovereignty of Ohio).

The reach of the Eleventh Amendment extends not only over suits against states, but also to subdivisions, agencies, and departments of a state that are considered "arm[s] of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). It further extends to suits against state officials. This is because "a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office," which

"is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). Additionally, sovereign immunity applies both to suits involving allegations that state officials have violated federal law, *see generally id.*, and to those involving state-law claims. *See Pennhurst*, 465 U.S. at 120.

All but one of the defendants in this case are state officials. The only defendant that is not a state official is the Commission. It is entitled to sovereign immunity as an arm of the State. As to the individuals, Norman serves as the Registrar of the BMV, a sub-division of the Ohio Department of Public Safety, which is an arm of the state; he is a state official. Tyack is the Clerk of the Franklin County Municipal Court, which is also considered an arm of the state. *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016); *see also Foster v. Walsh*, 864 F.2d 416, 418–19 (6th Cir. 1988) ("The Akron Municipal Court is part of the Ohio state court system established by the Ohio state legislature. It is subject to the supervision of the Ohio Supreme Court. The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction." (internal citations omitted)); *cf. Tennessee v. Lane*, 541 U.S. 509, 527 n.16 (2004). Deputy Clerks # 889 and 8098 are employees of the same lower-level state court. They, too, are state officials. Klein, though employed by the City of Columbus, is considered a state official for purposes of the Eleventh Amendment because he "acts as a state agent when prosecuting state criminal charges." *Pusey v. City of Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). Nick, Brachman, and Bruns are officers of a state commission. Finally, LaRose, as Ohio Secretary of State, is a state official. As Norman, Tyack, Deputy Clerks # 889 and 8098, Nick, Brachman, Bruns, and LaRose are all state officials, sovereign immunity bars federals court from hearing suits against them in their official capacities.

Of course, there are some exceptions to the doctrine of sovereign immunity. A state can, for example, consent to be sued. *See Railroad Co. v. Tennessee*, 101 U.S. 337, 339–40 (1880). Consent must be given clearly by the state, "by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). A state can also be sued where Congress has explicitly abrogated the reach of the Eleventh Amendment. *See, e.g.*, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). And finally, "suits against state officials seeking equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment." *Mich. Bell Telephone Co. v. Climax Telephone Co.*, 202 F.3d 862, 867 (6th Cir. 2000) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

But none of these exceptions applies here. The State of Ohio has not consented to suit, Bradley has cited no statute by which Congress has abrogated the State's sovereign immunity, and he is not asking for equitable relief. In fact, the opposite appears to be true. Although Bradley vaguely gestures at a § 1983 claim, he specifies that he has three causes of action—(1) defamation; (2) failure to notify of change in status; and (3) undue harassment, abuse of process, and malicious prosecution—all of which sound in state law. And Congress cannot abrogate states' sovereign immunity from state law claims in federal court. *See Pennhurst*, 465 U.S. at 120. Moreover, Bradley seeks damages. (Compl. at 15–16, ECF No. 2). But that is at the core of what the Eleventh Amendment protects against: "a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663.

Accordingly, Bradley's claims against Defendants in their official capacities and against the Commission cannot be sustained.

### C. Personal Capacity Claims

Bradley appears to bring claims against the individual defendants in their individual capacities as well. He writes that "[a]ll Defendants are sued in their official and individual capacities." (Compl. ¶ 64, ECF No. 2). But "courts may not simply rely on the characterization of the parties in the complaint" and instead must "look to whether the sovereign is the real party in interest" in determining whether a suit against a state official is in her official or individual capacity. *Lewis v. Clarke*, 581 U.S. 155, 161, 162 (2017) (citations omitted). *But see Does v. Whitmer*, 69 F.4th 300, 305 n.5 (6th Cir. 2023) (noting that "[t]he academic literature suggests that, in practice, courts often do take plaintiffs at their word"). In fact, the allegations in the Complaint indicate that Bradley's invocation of "individual capacity" is likely misguided. *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (noting that "the distinction between personal- and official-capacity action suits . . . continues to confuse lawyers and confound lower courts"). But for the sake of completeness and to avoid "wad[ing] into this swamp," this Court explains why, even assuming Bradley properly alleged claims against the individual defendants in their personal capacities, these claims are barred. *Whitmer*, 69 F.4th at 306 (quoting *Native Am. Distrib. v. Seneca-Cayuga Tobbaco Co.*, 546 F.3d 1288, 1297 (10th Cir. 2008)).

Although "Defendants in an official-capacity action may assert sovereign immunity," that defense is not available to officials who are sued in their individual capacity. *Lewis*, 581 U.S. at 163 (citing *Graham*, 473 U.S. at 167). Instead, "[a]n officer in an individual-capacity action . . . may be able to assert *personal* immunity defenses, such as . . . absolute prosecutorial immunity," quasi-judicial immunity, or qualified immunity. *Id.* (emphasis in original) (citing *Van de Kamp*

10

*v. Goldstein*, 555 U.S. 335, 342–44 (2009)); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). And if a state officer is entitled to immunity for certain acts, then she cannot be sued for those acts. The three forms of immunity listed above are all implicated in this case.

*First*, qualified immunity "extends to individuals performing discretionary functions unless their actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 822 (S.D. Ohio 2002) (quoting *Harlow*, 457 U.S. at 818). A right is considered "clearly established" if "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). But even accepting all allegations in the Complaint as true, Bradley has not set out any "clearly established" statutory or constitutional rights that have been violated.

With respect to Norman, Bradley's only allegation is that he supervised the BMV employees who issued the "block" of Bradley's vehicle registration—an action that was taken pursuant to a court order from the Franklin County Municipal Court. (Compl. ¶ 61, ECF No. 2). There is no right to drive, *see Ohio v. Tanner*, 472 N.E.2d 689, 693 (Ohio 1984) ("Driving is not a right but a privilege well within the purview of a state's police powers." (citations omitted)), let alone a "clearly established" right not to have a license and registration block imposed pursuant to court order.

With respect to Bruns, Nick, and Brachman, who all work at the Commission, Bradley alleges that Bruns lacked probable cause when she submitted an affidavit alleging that Plaintiff had failed to file a financial disclosure statement in compliance with Ohio law and that Nick and Brachman improperly consented to Bruns' actions. (*See* Compl. ¶¶ 24, 47–50, ECF No. 2). But Bradley acknowledges and admits that he failed to a financial disclosure statement to the

Commission in compliance with Ohio Rev. Code § 102.02. (*Id.* ¶ 14). He further acknowledges receiving warnings from the Commission about his failure to file. There is no clearly established federal right to not comply with valid campaign finance laws, nor is it a violation of constitutional (or statutory) rights for state officials to follow or attempt to enforce state statutes.

In short, Bradley's pleadings do not set forth any clearly established constitutional or statutory rights that Norman, Bruns, Nick, or Brachman have violated. As such, they are entitled to qualified immunity, which bars Bradley's claims against them in their individual capacities.

*Second*, "judicial immunity" is "shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999); *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988) (per curiam)). This doctrine applies to judges in their performance of judicial functions. *See Foster*, 864 F.2d at 417. It also applies to court officers who "perform[] tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune," such as clerks. *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citation omitted); *see also Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973). When applied to court officers rather than judges, this is referred to as "quasi-judicial immunity."

In this case, Tyack, the Clerk of the Franklin County Municipal Court, and Deputy Clerks # 889 and 8098, who both work under Tyack, are all court officers, *i.e.*, they assist the judge in carrying out the necessary functions of the judiciary. They are alleged to have processed the criminal complaint against Bradley and mailed him hearing notices without verifying the accuracy of the facts therein. (Compl. ¶¶ 27, 51–52, 59, ECF No. 2). These are "truly judicial acts" and not administrative, legislative, or executive acts "that simply happen to have been done

by judges." *Forrester v. White*, 484 U.S. 219, 227 (1988); *see Foster*, 864 F.2d at 417–18 (finding that the issuance of a warrant by the court's clerk at the direction of a judge was a "truly judicial act"); *Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002); *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981). Tyack and the deputy clerks therefore enjoy absolute quasi-judicial immunity from suit in connection with the processing of the criminal complaint against Bradley and the mailing of notices about hearings in that case.

*Third*, a prosecutor enjoys "absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). This applies only to actions that are an "integral part of the judicial process." *Id.* at 430 (quoting *Imbler v. Pachtman*, 500 F.2d 1301, 1302 (9th Cir. 1974)). Whether actions qualify as such is subject to a functional analysis that focuses on the "nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (citation omitted). Thus, a prosecutor is entitled to absolute immunity "in connection with his duties in functioning as a prosecutor," *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002), but not in connection to "'investigative' or 'administrative'" acts. *Id*.

Bradley alleges that Klein violated his due process rights in two ways: (1) by filing (or causing another attorney under Klein's supervision to file) a complaint against him without conducting a proper review of the Bruns affidavit; and (2) by failing to reply to Bradley's demurrer. (Compl. ¶¶ 53–54, 58, ECF No. 2). Both of these actions fall clearly within the "judicial phase of the criminal process," *Cunningham v. Dep't of Children's Servs.*, 842 F. App'x 959, 966 (6th Cir. 2021) (quoting *Imbler*, 424 U.S. at 430), wherein a prosecutor's actions are entitled to immunity. The former pertains to a prosecutor's decision to initiate a suit, which is not just part of the judicial process, but a part that the judicial process cannot exist without.

13

*See Imbler*, 424 U.S. at 431 ("We hold only that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."). The latter pertains to how a prosecutor proceeds with the prosecution, responds to a defendant's arguments, and prepares for trial. *See Buckley*, 509 U.S. at 273 (1993) (applying absolute immunity to acts like "the professional evaluation of the evidence assembled by the police and appropriate presentation for its presentation at trial"); *see also* OHIO R. CRIM. P. 12(a) ("All other pleas, demurrers, and motions to quash, are abolished."). In short, Klein is entitled to absolute prosecutorial immunity for his decision to prosecute Bradley and his evaluation of how best to proceed with that prosecution, including whether and how to respond to Bradley's demurrer.

For the foregoing reasons, the individual capacity claims are all barred because each of the individual defendants is entitled to either absolute or qualified immunity.

## V. CONCLUSION

For the reasons set forth more fully above, Plaintiff's Motions to Strike (ECF Nos. 14, 19, 23) and his Motion to Dismiss Secretary LaRose as Party Defendant (ECF No. 18) are **DENIED**. Defendants' various Motions to Dismiss (ECF Nos. 9, 10, 16, 20) are **GRANTED**. And Plaintiff's Motion for Summary Judgment (ECF No. 26), which asks for relief only as to the Commission, is **DENIED AS MOOT**. This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: August 22, 2023**